UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

DANIEL PEREZ,                                                   Civil Action No.

                           Plaintiff,

          -against-                                **COMPLAINT**

                                                      (Jury Trial Demanded)

CAPITAL ONE SERVICES, LLC., CAPTIAL
ONE SERVICES II, LLC., and ALEX ROBERTO
individually,

                              Defendants.
------------------------------------------------------------------X

Plaintiff DANIEL PEREZ, (hereinafter referred to as "Plaintiff" or "Perez"), by and through his attorneys, the DEREK SMITH LAW GROUP, PLLC, hereby complains of Defendants CAPITAL ONE SERVICES, LLC. (hereinafter referred to as "CAPITAL ONE SERVICES"), CAPITAL ONE SERVIVES II, LLC. (hereinafter referred to as "CAPITAL ONE SERVICES II"), and ALEX ROBERTO (hereinafter referred to as "ROBERTO") (hereinafter collectively referred to as "Defendants or "Capital One"), upon information and belief as follows:

### JURISDICTION AND VENUE

1. Jurisdiction of this action is conferred upon this Court as this case involves a Federal Question under the ADA. The Court also has jurisdiction pursuant to 29 U.S.C. §2617; 28 U.S.C. §1331, §1343 and pendent jurisdiction thereto.

1

2. Additionally, this Court has supplemental jurisdiction under the State law causes of action asserted in this action.

3. Plaintiff satisfied all administrative prerequisites and is filing this case in a timely manner.

4. Venue is proper in the Eastern District of New York under 28 U.S.C. 1391 (b)-(c) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred within the Eastern District of New York.

## PARTIES

5. Plaintiff PEREZ is an individual man residing in the State of New York, County of Nassau.

6. At all times material, Defendant CAPITAL ONE SERVICES, LLC. was and is a limited liability company which is authorized to conduct business in the State of New York and does so under the corporate entity name as Capital One Bank.

7. At all times material, Defendant CAPITAL ONE SERVICES II LLC., was and is a foreign limited liability company which is authorized to conduct business in the State of New York and does so under the corporate entity name Capital One Bank.

8. Both Defendants herein are collectively referred to herein as "CAPITAL ONE."

9. At all times material, Plaintiff PEREZ was an employee of Defendants CAPITAL ONE.

10. Upon information and belief defendant's employee Alex Roberto (hereinafter also referred to as "Roberto") is an individual male residing in the State of New York, and is a resident of either Nassau or Suffolk County.

11. At all times material, Defendant ROBERTO is a Market Executive of CAPITAL ONE

12. At all times material, Defendant ROBERTO held supervisory authority over Plaintiff PEREZ with regard to his employment, controlling many tangible aspects of Plaintiff's job duties, including holding the power to hire and fire Plaintiff.

## MATERIAL FACTS

13. This case involves disability discrimination, retaliation, and unlawful termination of Plaintiff by Defendants.

14. In or around October of 2012, Defendants hired Plaintiff as a Branch Manager for Capital One Bank. Plaintiff PEREZ was assigned to work at 121 Middle Neck Road, Great Neck, New York 11021.

15. Despite his disability, Plaintiff PEREZ successfully carried out his essential job functions with or without a reasonable accommodation.

16. Plaintiff's job duties included: (1) staffing; (2) coaching and developing associates; (3) mentoring underperforming branches; (4) ensuring accountability through effective performance management; (5) ensuring the branches are operationally compliant and (6) generating a customer friendly environment.

17. During the duration of Plaintiff's employment, Plaintiff PEREZ was committed to his position. Plaintiff PEREZ worked assiduously and completed each assigned task on time.

18. In fact, each and every year, Defendants gave Plaintiff PEREZ stellar performance reviews. Every single year, Defendants ranked Plaintiff's performance as "strong" or "very strong."

19. Notably, in Plaintiff's PEREZ 2016 Year- End Review, Plaintiff's evaluation indicated that Plaintiff Perez had "a very good year helping deliver results in two branches, Great Neck Village and Plainview." Plaintiff's evaluation further stated "neither branch had any financial losses and all required learnings were completed for all associates in a timely manner."

20. Throughout Plaintiffs tenure at CAPITAL ONE, Plaintiff PEREZ received a number of wonderful customer reviews as well.

21. As a result of Plaintiff's hard work and dedication to Defendants, Plaintiff PEREZ was promoted to manage two separate banks in the Great Neck, Long Island area.

22. In or around the end of February 2018, Defendants brought on a new Market Executive, Alex Roberto, to cover Plaintiff's territory. Upon information and belief, defendants employed ROBERTO for a number of years. However, this would be the first time that ROBERTO was tasked with supervising Plaintiff PEREZ.

23. ROBERTO was hired to replace Defendants prior Market Executive, Jodi Dayborn.

4

24. On or about December 14, 2017, Plaintiff PEREZ emailed Defendants' former Market Executive Dayborn, to make a paid timed off request for the year 2018.

25. In Plaintiff's request, Plaintiff PEREZ specifically made mention of two life events: (i) The Plaintiff advised Defendants that his wife was pregnant with their second child and that the Plaintiff would be out for paternity leave after birth; and (ii) The Plaintiff advised Defendants that his father was terminally ill with stage 4 cancer and would likely not live through 2018.

26. When ROBERTO replaced Dayborn in or around 2018, Plaintiff Perez forwarded the aforementioned email to ROBERTO and to ROBERTO'S Administrative Assistant, Banks, on or about March 6, 2018.

27. Throughout the duration of Plaintiff's employment, Defendants and/or their employees would normally reply to such emails from the Plaintiff. However, in this instance, Plaintiff PEREZ received no such response.

28. On or about March 23, 2018, Plaintiff PEREZ sent a text message to ROBERTO, advising ROBERTO that he would be unable to make it to work for the day. Specifically, Plaintiff PEREZ advised ROBERTO that he suffered from the diagnosed disability of Multiple Sclerosis and that it would be hard for the Plaintiff to physically manage getting through heavy snow.

29. Plaintiff PEREZ advised ROBERTO of his disability but neither ROBERTO nor any representatives of the Defendants contacted Plaintiff PEREZ to have an interactive discussion regarding possible reasonable accommodations.

30. Immediately after sending this correspondence, Defendants informed Plaintiff PEREZ that he was personally being investigated for coaching bankers on

unethical sales practices by requiring them to sell credit cards to customers that they did not need. Plaintiff PEREZ was further advised that the foregoing investigation was related to behavior which took place at the bank in or around 2014.

31. Plaintiff PEREZ never tried to sell any credit cards to a customer that they did not need, never coached his staff to sell credit cards to a customer, nor was Plaintiff PEREZ ever disciplined by Defendants for such alleged behavior.

32. Prior to Plaintiff PEREZ notifying Defendants of his disability, Defendants acknowledged that Plaintiff PEREZ was doing a great job and never raised any performance or ethical issues with Plaintiff. In Defendants' 2017 review of Plaintiff PEREZ, Dayborn commented that Plaintiff PEREZ "**consistently leads and encourages his team to do the right thing for Customers / Associates and the Bank.**"

33. In fact, when Defendants accused Plaintiff PEREZ of alleged unethical behavior just days after advising ROBERTO of the disability, Defendants advised Plaintiff PEREZ that the unethical behavior was perpetrated by Defendants' employees Tarwattie Singh a/k/a Subrena and Bovell Carruthers.

34. At or around the time period in which Defendants alleged Plaintiff PEREZ perpetrated unethical behavior, Defendants' employees Subrena and Carruthers had a contractual obligation to report any alleged unethical behavior to supervisors and/or Defendants' Associate Relations. However, both Subrena and Carruthers never did so despite being mandated to report any and all unethical behavior.

35. Interestingly enough, Defendants never disciplined or terminated the two employees that allegedly perpetrated the unethical acts: Subrena Singh and Bovell Carruthers. Rather, Defendants fabricated a reason to terminate Plaintiff PEREZ on account of his disability which he had just reported to Defendants' Marketing Director ROBERTO.

36. Moreover, Plaintiff PEREZ had absolutely nothing to do with any sales tactics of the Defendants. Rather, Defendants themselves would often push unobtainable and questionable business practices on their new employees.

37. Notably, some of these tactics were outlined in Capital One's "Look Ahead" materials, which "required" sales representatives to sell enough banking instruments in order to earn a certain amount of "points" every quarter. Defendants often placed pressure directly on bankers/associates by publishing daily scorecards breaking down sales targets. At no point in time did Plaintiff PEREZ partake in any of the development or implementation of the Defendants' "scorecard."

38. Defendants terminated Plaintiff PEREZ on account of his disability, for taking leave, and for notifying Defendants of ailing father's health and his wife's pregnancy.

39. As a result of Defendants' actions, Plaintiff felt extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

40. The above are just some examples of disability discrimination, retaliation, and unlawful termination to which Defendants subjected Plaintiff.

41. As a result of Defendants' discriminatory and intolerable treatment, Plaintiff suffered and continues to suffer from anxiety and severe emotional distress. He cannot sleep at night and the unlawful termination has exacerbated, aggravated and re-activated Plaintiff's diagnosed disability.

42. As a result of the Defendants' discriminatory and unlawful treatment, Plaintiff was forced to seek mental health treatment and continues to treat with a psychologist and psychiatrist on a regular basis.

43. As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer the loss of income, the loss of a salary, bonuses, benefits and other compensation which such employment entails. Plaintiff has also suffered pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

44. As Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law. Plaintiff demands Punitive Damages against all Defendants jointly and severally.

45. Plaintiff also seeks reinstatement.

### AS A FIRST CAUSE OF ACTION FOR DISCRIMINATION UNDER THE AMERICANS WITH DISABILITIES ACT (not against individual defendants)

46. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

47. Plaintiff claims Defendants violated Title I of the Americans with Disabilities Act of 1990 (Pub. L. 101-336) (ADA), as amended, as these titles appear in volume 42 of the United States Code, beginning at section 12101.

48. SEC. 12112. [Section 102] specifically states "(a) General Rule. - No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."

49. Defendants violated the section cited herein by failing to accommodate Plaintiff, creating and maintaining discriminatory working conditions, and otherwise discriminating and retaliating against Plaintiff because of his disability.

50. Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of the ADA.

51. Defendants violated the above and Plaintiff suffered numerous damages as a result.

## AS A SECOND CAUSE OF ACTION FOR RETALIATION UNDER THE AMERICANS WITH DISABILITIES ACT (not against individual defendants)

52. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

53. Plaintiff claims Defendants violated Title I of the Americans with Disabilities Act of 1990 (Pub. L. 101-336) (ADA), as amended, as these titles appear in volume 42 of the United States Code, beginning at section 12101.

54. SEC. 12203. [Section 503] states, "(a) Retaliation. - No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter."

55. Defendants engaged in unlawful employment practice prohibited by the above statute, by retaliating against Plaintiff with respect to the terms, conditions or privileges of his employment because of his opposition to the unlawful employment practices of Defendants.

56. Defendants violated the above and Plaintiff suffered numerous damages as a result.

### AS A THIRD CAUSE OF ACTION FOR DISCRIMINATION UNDER NEW YORK STATE LAW

57. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

58. Executive Law § 296 provides that "1. It shall be an unlawful discriminatory practice: (a) For an employer or licensing agency, because of an individual's age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, marital status, or domestic violence victim status, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

59. Defendants engaged in an unlawful discriminatory practice by discriminating against the Plaintiff because of his disability.

60. Plaintiff hereby makes a claim against Defendant under all of the applicable paragraphs of Executive Law Section 296.

61. Defendants violated the above and Plaintiff suffered numerous damages as a result.

### AS A FOURTH CAUSE OF ACTION FOR RETALIATION UNDER NEW YORK STATE LAW

62. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

63. New York State Executive Law §296(7) provides that it shall be an unlawful discriminatory practice: "For any person engaged in any activity to which this section applies to retaliate or discriminate against any person because [s]he has opposed any practices forbidden under this article."

64. Defendants engaged in an unlawful discriminatory practice by retaliating, and otherwise discriminating against Plaintiff with respect to the terms, conditions or privileges of employment because of Plaintiff's opposition to the unlawful practices of Defendants.

65. Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of New York State Executive Law § 296.

66. Defendant engaged in an unlawful discriminatory practice by wrongfully retaliating against Plaintiff.

11

67. Defendants violated the above and Plaintiff suffered numerous damages as a result.

### AS A FIFTH CAUSE OF ACTION
### FOR AIDING AND ABETTING UNDER
### NEW YORK STATE LAW

68. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of the complaint.

69. New York State Executive Law §296(6) further provides that "It shall be an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of ay of the acts forbidden under this article, or to attempt to do so."

70. Defendant engaged in an unlawful discriminatory practice by aiding, abetting, compelling and/or coercing the discriminatory behavior as stated herein.

71. Defendants violated the above and Plaintiff suffered numerous damages as result.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Court enter a judgment against the Defendants jointly and severally for all available damages including but not limited to emotional distress, lost wages, back pay, front pay, punitive damages, statutory damages, attorney's fees, costs, medical expenses, interest and all other damages as are just and proper to remedy Defendants' unlawful employment practices.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues properly triable thereby

Dated: New York, New York

November 19, 2018

Respectfully Submitted,

**DEREK SMITH LAW GROUP, PLLC.**

By: _____/s/_____
Paul Liggieri, Esq.
One Penn Plaza, Suite 4905
New York, N.Y. 10119
(212) 587-0760